## ROTHSCHILD v. LEONHARD.

[No. 4,854. Filed June 30, 1904.]

LIS PENDENS.—*Purchaser of Land Pending Suit to Reform Deed.—Notice.*— Where defendant purchased real estate and received the deed of conveyance thereto while an action was pending to correct and reform the deed of his grantor, he was chargeable with notice arising from the commencement of the action itself without the filing of a *lis pendens* notice as provided by §327 Burns 1901. *pp. 459, 460.*

VENDOR AND PURCHASER.—*Adverse Possession.—Notice by Purchaser.*— Actual possession of lands under a claim of title is sufficient notice of such claim to put others on inquiry as to the nature and extent of the claim. *pp. 460, 461.*

From Randolph Circuit Court; *John W. Macy*, Judge.

Suit by William E. Leonhard against Emanuel Rothschild. From a judgment in favor of plaintiff, defendant appeals. *Affirmed.*

*D. T. Taylor, W. F. MacGinnitie* and *T. J. Taylor,* for appellant.

*G. W. Bergman, E. E. McGriff* and *O. H. Adair,* for appellee.

HENLEY, J.—Appellee commenced this action by a complaint in two paragraphs. The first paragraph was the statutory form of complaint to quiet title to real estate. The second paragraph asks that a certain deed of conveyance of said real estate be reformed and appellee's title quieted. Appellant answered in two paragraphs, the first being a general denial. The second paragraph of answer was to the effect that appellant was an innocent purchaser of the real estate in question, without notice of appellee's claims of title thereto.

At the request of appellant the court found the facts specially, and stated conclusions of law thereon. To each of these conclusions appellant has excepted. Judgment was rendered in favor of appellee, quieting his title and reforming the deed. Appellant's exception to the conclu-

sions of law admits that the facts which were within the issues were fully and correctly found. The special finding furnishes a complete statement of the facts upon which appellee relies for his judgment, and is as follows:

"(1)    That on the 12th day of May, 1890, one Mathias Shirk was the owner in fee simple of the following described real estate in Jay county, Indiana, to wit:    The east half of the east half of the northwest quarter of the northwest quarter of section ten; also the west half of the northeast quarter of the northwest quarter of section ten; also the west half of the east half of the northeast quarter of section ten; also the south half of the east half of the east half of the west half of the northwest quarter of section ten; also the south half of the west half of the east half of the east half of the northwest quarter of section ten; also twenty acres off of the east side of the northwest quarter of section ten, commencing at the southeast corner of the northwest quarter, thence west twenty rods, thence north 160 rods, thence east twenty rods, thence south 160 rods to the place of beginning—all in township twenty-four north, range thirteen east, containing in all 100 acres, more or less, being the real estate described in the plaintiff's complaint.

"(2)    That on the 14th day of May, 1890, said Mathias Shirk and Rhoda Shirk, his wife, conveyed by warranty deed to William E. Stults the following part of the real estate described in special finding No. 1 herein, to wit: 'The south half of the east half of the east half of the west half of the northwest quarter of section ten; also the south half of the west half of the east half of the northwest quarter of section ten; and the south half of the west half of the east half of the east half of the northwest quarter of section ten; also twenty acres off of the east side of the northwest quarter of section ten, commencing at the southeast corner of the northwest quarter, thence west twenty rods, thence north 160 rods, thence east twenty rods, thence south 160

rods, to the place of beginning—all in township twenty-four north, range thirteen east, in all sixty acres, more or less.' That on the 12th day of August, 1890, said William H. Stults, unmarried, conveyed by warranty deed to said Rhoda E. Shirk, wife of said Mathias Shirk, the said real estate hereinbefore described in this finding No. 2.

"(3) That on the 12th day of May, 1890, said Mathias Shirk and Rhoda E. Shirk, his wife, conveyed by warranty deed to Anthony Shirk the following part of the real estate described in special finding No. 1 herein, to wit: The east half of the east half of the northwest quarter of the northwest quarter of section ten; also the west half of the northeast quarter of the northwest quarter of section ten; also the west half of the east half of the northeast quarter of the northwest quarter of section ten—all in township twenty-four north, range thirteen east, containing forty acres, more or less; that said conveyance from Mathias Shirk and Rhoda E. Shirk, his wife, to said Anthony Shirk, was for the purpose only of indemnifying the said Anthony Shirk against loss by reason of his being surety for the said Mathias Shirk on certain promissory notes; that by virtue of said conveyance said Anthony Shirk held the legal title to said real estate, and said Mathias Shirk held the equitable title thereto.

"(4) That on the — day of September, 1891, being prior to the 21st day of September, 1891, said Mathias Shirk sold and agreed to convey and cause to be conveyed to one John F. Adams, for a valuable consideration, all of the real estate described in special finding No. 1 herein.

"(5) That on the 21st day of September, 1891, in pursuance of said agreement, said Rhoda E. Shirk and said Mathias Shirk, her husband, conveyed by warranty deed to said John F. Adams, for a valuable consideration, the said real estate described in special finding No. 2 herein.

"(6) That on the 23d day of September, 1891, said Mathias Shirk, in pursuance of said agreement, attempted

and intended to convey by the execution of a quitclaim deed therefor to the said John F. Adams by the said Anthony Shirk and Rebecca E. Shirk, his wife, the said real estate described in special finding No. 3 herein, which real estate is described as follows, to wit: The east half of the east half of the northwest quarter of the northwest quarter of section ten; also the west half of the northeast quarter of the northwest quarter of section ten; also the west half of the east half of the northeast quarter of the northwest quarter of section ten—all in township twenty-four north, range thirteen east, containing forty acres, more or less, in Jay county, Indiana; that by mutual mistake of the said Mathias Shirk, Anthony Shirk, Rebecca E. Shirk, and Rhoda E. Shirk, and said John F. Adams, and by mistake of the scrivener who drew said deed, the following description was set out therein, instead of the correct one as in this special finding above set out, to wit: The east half of the east half of the northwest quarter of the northwest quarter of section ten; also the west half of the northeast quarter of the northwest quarter of section ten; also the west half of the east half of the east half of the northwest quarter of the west quarter of section ten— all in township twenty-four north, range thirteen east, in Jay county, Indiana; that said Mathias Shirk, Anthony Shirk, Rebecca E. Shirk and Rhoda E. Shirk, intended and attempted by said deed to convey the real estate as first described and set out in this special finding No. 6; that said deed with said erroneous description was delivered to the said John F. Adams, and accepted by him, he supposing it correctly described said real estate as described and set out in this special finding No. 6; that on the 6th day of April, 1900, said deed was reformed by the Jay Circuit Court of Jay county, Indiana, in a cause therein pending, entitled John P. Leonhard v. Anthony Shirk, Rebecca E. Shirk, Mathias Shirk, Rhoda E. Shirk, John F. Adams, and Eva Adams, and numbered 10,714 upon the docket of

said court, by striking therefrom said false, mistaken, and erroneous description as hereinbefore set out, and by inserting in lieu thereof the true and correct description, as first described in this special finding No. 6; that at the time of the filing of said cause numbered 10,714 in the Jay Circuit Court of said Jay county, Indiana, and at the time of rendering the said decree of reformation of the deed in said cause, as hereinbefore stated, said John P. Leonhard was the owner of all the real estate described in special finding No. 1.

"(7)    That on the 1st day of October, 1891, said John F. Adams and Minerva Adams, his wife, conveyed by warranty deed, for a valuable consideration, to John P. Leonhard, all the real estate described in special finding No. 1 herein.

"(8)    That at the time of the sale of said real estate by Mathias Shirk to said John F. Adams, and at the time of the sale of said real estate by John F. Adams to John P. Leonhard, as before stated, said land was occupied by a tenant, whose tenancy expired on the 1st day of March, 1892.

"(9)    That on the 1st day of March, 1892, the said John P. Leonhard, by virtue of his deed of conveyance from said John F. Adams, took possession of all of said real estate described in special finding No. 1 herein, and held open, notorious, unequivocal, and exclusive possession thereof as owner of said real estate, and claimed ownership thereof until his death, which occurred on the 22d day of April, 1900.

"(10)    That said John P. Leonhard died intestate in Jay county, Indiana, on the 22d day of April, 1900, leaving surviving him his widow, Christena Leonhard, and his sons and daughters whose names are as follows: Jacob Leonhard, John W. Leonhard, Christian Leonhard, Emma C. Haley, William E. Leonhard, Anna M. Cull, George F. Leonhard, Harriet L. Young, and Henry P. Leonhard;

that all of said sons and daughters were of legal age at the death of John P. Leonhard; that said son William E. Leonhard is the plaintiff in this action.

"(11) That on the 12th day of January, 1901, Christena Leonhard, widow of said John P. Leonhard, and Jacob Leonhard, John W. Leonhard, Christian Leonhard, Emma C. Haley, Anna M. Cull, Harriet Young, George Leonhard, and Henry Leonhard, sons and daughters of John P. Leonhard, as aforesaid, conveyed said real estate by quitclaim deed, for a valuable consideration, to said William E. Leonhard, son of said John P. Leonhard, as aforesaid, and the plaintiff in this action.

"(12) That upon the death of said John P. Leonhard on the 22d day of April, 1900, said Christena Leonhard, Jacob Leonhard, John W. Leonhard, Christian Leonhard, Emma C. Haley, Anna M. Cull, Harriet Young, George Leonhard, Henry Leonhard, and William E. Leonhard took possession of all of said real estate described in special finding No. 1 herein as owners thereof by inheritance from said John P. Leonhard, and were the owners thereof and claimed ownership thereto, and held open, notorious, unequivocal, and exclusive possession thereof as owners of said real estate until the 12th day of January, 1901.

"(13) That on the 12th day of January, 1901, said William E. Leonhard, by virtue of the conveyance to him mentioned in special finding No. 11 herein, took possession of all of said real estate described in special finding No. 1 herein, and held open, notorious, unequivocal, and exclusive possession thereof as owner of said real estate, and was the owner of said real estate, and claimed ownership thereof at all times up to and including the time of the trial of this cause.

"(14) That on the 23d day of October, 1899, said Anthony Shirk and Rebecca E. Shirk, his wife, executed a quitclaim deed to Mathias Shirk and Rhoda E. Shirk, husband and wife, for the following described real estate in

Jay county, Indiana, to wit: The west half of the east half of the northeast quarter of the northwest quarter of section ten, township twenty-four north, range thirteen east, containing ten acres; and at the time of the execution of said deed said Anthony Shirk and Rebecca E. Shirk, his wife, were not the owners of said real estate, or any part thereof, nor were either of them owners of said real estate, or any part thereof.

"(15)   That on the 31st day of March, 1900, said Mathias Shirk and Rhoda E. Shirk, his wife, conveyed said real estate described in special finding No. 14 herein by warranty deed to the defendant Emanuel Rothschild; that at the time of said conveyance said Mathias Shirk and said Rhoda E. Shirk were not the owners of said real estate, and had no right, title, or interest in said real estate, either equitable or legal, nor were either of them the owner of said real estate, nor had either of them any right, title, or interest in said real estate, either equitable or legal; that said Mathias Shirk and Rhoda E. Shirk have held no right, title, or interest therein, either legal or equitable, since the 23d day of September, 1899, up to and including the time of the trial of this cause.

"(16)   That at the time of the conveyance of said real estate by the said Mathias Shirk and Rhoda E. Shirk, his wife, to the said defendant Emanuel Rothschild, said defendant Rothschild had notice that John P. Leonhard was the owner of said real estate, and in possession of the same, and that he was claiming the title thereto.

"(17)   That on the 18th day of March, 1901, and before the bringing of this action by the plaintiff against the defendant herein, said plaintiff made a demand for the reformation of the said deed of Anthony Shirk and Rebecca E. Shirk, his wife, to said John F. Adams, described in special finding No. 6 herein, and set out in plaintiff's complaint, which reformation said defendant, Emanuel Rothschild, refused to make."

Rothschild v. Leonhard.

Upon the facts so found the court stated as its conclusions of law that appellee was entitled to have his deed reformed as prayed for in the complaint, and to have his title quieted against appellant, and that appellee recover from appellant his costs.

The facts so found were within the issues, and the real question in this case is, do the facts show that appellant was a purchaser in good faith of the real estate in question? Independent of any other reasons which might result in an affirmance of this judgment, it is plainly apparent from the finding of facts that appellant had notice of appellee's claim to the real estate in question at the time of the purchase and attempted conveyance to him. He was not a *bona fide* purchaser, because it plainly appears from the facts that he was a purchaser from a party to the pending litigation, and was bound by whatever decree was entered by the court in the action to which his grantor had been made a party defendant. The purchase was made by appellant, and the deed of conveyance made to him while an action was pending to correct and reform the deed by which appellant's grantor had attempted to convey the ten acres of land in question.

The Supreme Court of the United States in *Eyster* v. *Gaff,* 91 U. S. 521, 23 L. Ed. 403, said: "We have already said, and no authority is necessary to sustain the proposition, that a sale and conveyance by the mortgagor pending the suit would not prevent the court from proceeding with the case without the purchaser, nor affect the title of him who bought under the decree. So, in a suit against the vendor of real estate for specific performance, his conveyance of the legal title after suit was brought would not suspend the proceeding or defeat the title under the decree of the court. The obvious reason for this is, that if, when the jurisdiction of the court has once attached, it could be ousted by the transfer of the defendant's interest, there would be no end to the litigation, and justice would be

defeated by the number of these transfers.    Another reason is, that when such a suit is ended by a final decree transferring the title, that title relates back to the date of the instrument on which the suit is based, or to the commencement of the suit; and the court will not permit its judgment or decree to be rendered nugatory by intermediate conveyances."    See, also, *Stout* v. *Lye,* 103 U. S. 66, 26 L. Ed. 428; *Randell* v. *Lower,* 98 Ind. 255.

Appellant was bound to take notice of appellee's claims to the land in controversy, as stated in his complaint against appellant's grantor, without appellee filing a *lis pendens* notice under the statute.    That part of the *lis pendens* statute applicable to the question in the case at bar is as follows:    "And whenever any person shall have commenced a suit    *    *    *    upon any claim not founded upon an instrument executed by the party having the legal title to such real estate, as appears from the proper records of such county, and recorded as by law required;    *    *    *    it shall be the duty of such person to file with the clerk of the circuit court in each county where the real estate sought to be affected is situate, a written notice," etc.    §327 Burns 1901.    But the cause of action brought against appellant's grantor by appellee was upon and for the purpose of reforming an instrument executed by the party having the legal title to the real estate in question, and such title was in the defendant, as appeared from the proper record in the recorder's office of the county where the land was situated, and the instrument by which the defendant to that action secured his title had been recorded as by law required. Appellee, not being required by the statute to file notice as therein provided, the common law rule of notice arising from the commencement of the action itself obtains.    *Britz* v. *Johnson,* 65 Ind. 561; *Murray* v. *Lylburn,* 2 Johns. Ch. 441.

It further appears from the finding of facts that the grantee named in the deed in which the defective and

erroneous description occurs took immediate possession of all of the land described therein, including the ten acres here in controversy, and has been in uninterrupted possession thereof since that time, and at all times claiming title thereto.

It is said in 4 Cent. L. J. 122: "In this country and in England the doctrine seems quite firmly established, that open, notorious, unequivocal and exclusive possession of real estate, under an apparent claim of ownership, is notice to the world of whatever claim the possessor asserts, whether such claim is legal or equitable in its nature."

In *Dyer* v. *Eldridge,* 136 Ind. 654, the court said: "Actual possession of lands under a claim of title is sufficient notice of such claim to put others on inquiry as to the extent and nature of the claim." To the same effect see *Johnston* v. *Glancy,* 4 Blackf. 94, 28 Am. Dec. 45; *Crassen* v. *Swoveland,* 22 Ind. 427, 434.

For the reasons stated the court's conclusions of law on the facts found were correct. The material facts found by the court are all sustained by the evidence. The second paragraph of complaint is sufficient in every respect to sustain the judgment correcting the description in the deed and to quiet appellee's title to the land in question, and there was no error in the rulings of the court in the trial of the cause. It is apparent from the whole record in this case that the judgment rendered is correct, and confirms in appellee rights to which he is justly entitled.

Judgment affirmed.