Kenneth LOBB and Elsie Lobb, Appellants–Third–Party Defendants,

v.

Melissa HUDSON–LOBB, Appellee– Respondent/Third–Party Plaintiff.

No. 30A04–0903–CV–139.

Court of Appeals of Indiana.

Sept. 17, 2009.

R. Scott Sirk, Brand Davis Morelock, Greenfield, IN, Attorney for Appellants.

David P. Murphy, David P. Murphy & Associates, P.C., Greenfield, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kenneth and Elsie Lobb (collectively "the Lobbs") appeal from the dissolution court's judgment ordering the sale of their real estate to satisfy a judgment lien from a decree that dissolved the marriage of Melissa Hudson–Lobb ("Wife") and Kevin Lobb ("Husband"). We address a single dispositive issue on review, namely, whether the court erred when it determined that the money judgment awarded to Wife in the Decree of Dissolution of Marriage ("Decree") constituted a judgment lien against the Lobbs' real estate.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 23, 2004, Husband filed a petition for dissolution of marriage. The court scheduled the matter for final hearing on March 24, 2005. On that date, the parties orally presented a settlement agreement to the court. As a result, the court orally pronounced the dissolution of the parties' marriage and ordered Husband's attorney to submit a proposed decree.

At some point, the former marital residence was listed for sale for $339,000. On June 3, Wife filed a petition to enforce the

agreement and a request for an emergency hearing.[1] On June 22, Husband executed a mortgage, secured by the former marital residence, in favor of the Lobbs, his parents. That mortgage was recorded on July 8.

On July 15, 2005,[2] the court entered the Decree, which provides, in relevant part:

WHEREAS, the parties, [Husband and Wife,] in order to arrive at an amicable settlement and understanding, have agreed as to their respective rights in connection with any and all rights and claims which either of them has against the other in the event a Decree of Dissolution is granted in the above proceedings, this mutual settlement agreement being subject to the approval of the Court which shall hear the action for dissolution;

NOW, THEREFORE, in consideration of the promises and the mutual covenants herein contained, the parties enter into the following Agreement of Settlement:

\* \* \*

*Section 2.1 Real Estate.* Upon dissolution of the marriage, Husband shall be declared the owner of the real estate located at 3424 South 500 West, New Palestine, Indiana, and shall assume, pay, defend and hold Wife harmless from paying the mortgage thereon to Wells Fargo Mortgage Company. Provided, however, Wife shall have the right to reside in said residence for a period not to exceed sixty (60) days from the date of approval of this Agreement by the Court. . . . Wife shall execute a Quitclaim Deed for her interest in said real estate at the time of payment of the Fifty Thousand Dollars ($50,000.00) referred to herein. . . .

\* \* \*

*Section 2.2 Personal Property.*

\* \* \*

(b) *Wife's Property.* Wife shall have and retain exclusive legal title, free and clear of all claims of Husband, to the following property[:]

10. The sum of One Hundred Sixty-seven Thousand Seven Hundred Forty-five Dollars and Fifty Cents ($167,-745.50) which shall be paid to Wife by Husband to equalize the distribution of [the] marital estate herein. The sum of Fifty Thousand Dollars ($50,-000.00) shall be paid in cash upon execution of a Quitclaim Deed for the marital residence by Wife. In addition, Fifty Thousand Dollars ($50,000.00) shall be paid, without interest, within ninety (90) days of Wife's vacation of the marital residence or upon the sale of the marital residence, whichever occurs first. The balance of Sixty-seven Thousand Seven Hundred Forty-five Dollars and Fifty Cents ($67,-745.50) shall be set off to Wife by virtue of a Qualified Domestic Relations Order from Husband's 401K account. Said Qualified Domestic Relations Order shall be prepared by counsel for Wife.

---

1. Neither the parties nor the record on appeal explain whether Wife sought by this motion to enforce a pendente lite order or the settlement agreement that had been read into the record at the final hearing.

2. The file-stamp date on the Decree is July 12, 2005, but the date on which the court "approved and ordered" the decree is July 15, 2005. Appellee's App. at 73. Our decision does not hinge on which of these dates is correct. However, for simplicity, in future references we will refer to the Decree as executed on July 15, 2005.

* * *

*Section 2.6 Attorney[']s Fees and Expenses.* Each of the parties shall pay their own attorney's fees, accountant's fees or other expenses in this proceeding and each shall hold the other harmless of any such expenses to be paid by said parties, except for the fact that Husband agreed to pay C. Thomas Billings the sum of Three Thousand Dollars ($3,000.00) as partial attorney's fees in this cause within sixty (60) days of the date of approval of this agreement by the Court.

* * *

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court, that the bonds of matrimony heretofore existing between the Petitioner [Husband] and Respondent [Wife] herein be, and they are hereby DISSOLVED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court, that the certain Agreement entered into by and between the parties and dated the 11th day of July, 2005, which is incorporated in this Decree, is hereby APPROVED in open Court and each of the parties is declared the owner of the property set over to them [sic] in the Agreement. Further, each of the parties is ORDERED to perform their [sic] respective obligations under the Agreement in matters pertaining to property settlement subject to the continuing jurisdiction and further orders of

this Court for the purpose of enforcing such obligations. . . .

Appellants' App. at 3–15.

Wife received a check in the amount of $50,000 on either June 27, 2005 or July 1, 2007, the date she executed a quitclaim deed that transferred her interest in the former marital residence to Husband.[3] That check was written by Kenneth Lobb, Husband's father. Wife also received the sum of $67,745.50 from Husband's 401(k) account by means of a qualified domestic relations order. These payments left a principal balance of $50,000 that Husband owed Wife under the Decree.

On August 25, 2005, C. Thomas Billings, Wife's former dissolution attorney, filed a notice of attorney's lien with the court. On November 1, Billings filed a motion to enforce the Decree by proceedings supplemental with regard to the order to pay $3,000 of Wife's attorney's fees. On January 20, 2006, Wife filed a citation for contempt for nonpayment of settlement proceeds; on March 6, Wife filed a verified motion for proceedings supplemental; and on March 17, the court entered a "final order in garnishment per decree."[4] *Id.* at 6.

On April 28, 2006, Husband executed a warranty deed transferring his interest in the former marital residence to the Lobbs. Real estate closing documents show that the Lobbs purchased the former marital residence from Husband for the sum of $307,321.00 on May 3, and his deed to them was recorded on May 5. Before purchasing the residence, the Lobbs obtained a title search for title insurance from Title First Agency ("Title First"). The effective

---

3. According to a title insurance policy contained in the record on appeal, the former marital residence was transferred to Husband by a quitclaim deed that was recorded on July 13, 2005.

4. The parties have not included a copy of Wife's citation for contempt, her motion for proceedings supplemental, or the final order in garnishment in the record on appeal.

date on the title insurance commitment was April 14, 2006.[5]

On March 20, 2007, Wife filed her summons, lis pendens notice, and complaint for foreclosure. On May 1, the Lobbs filed a motion to dismiss the complaint for failure to state a claim under Trial Rule 12(B)(6).[6] On May 17, Wife filed her amended complaint for foreclosure. The court heard argument on the motion to dismiss on May 18 and took the matter under advisement.

On April 10, 2008, the court held a trial on the amended complaint. At the trial, Wife filed her "motion for findings and conclusions[.]" Appellee's Brief at 5. At the conclusion of the evidence, at the request of Wife's counsel, the record remained open to allow Wife to file a certified copy of the business records of Title First regarding the closing documents for the sale of the former marital residence to the Lobbs. Wife tendered those documents to the court on June 13.

On July 25, the court entered its "Findings of Fact[,] Conclusions [of] [Law and Judgment]" (the "Foreclosure Judgment"). Appellants' App. at 17–23. The Foreclosure Judgment provides in relevant part:

### FINDINGS OF FACT

\* \* \*

2. That on the 12th day of July 2005 this Court entered a written "Decree of Dissolution of Marriage" which provided, among other things that Wife should receive:

A. "The sum of $167,745.50 which shall be paid to Wife by Husband to equalize the distribution of the marital estate herein." (Article II, Section 2.2(b), paragraph 10, page 8);

B. "The sum of $50,000.00 shall be paid in cash upon execution of a Quit Claim Deed for the marital residence by wife Melissa." (Article II, Section 2.2(b), paragraph 10, page 8);

C. "In addition $50,000.00 shall be paid, without interest, within ninety (90) days of Wife's vacation of the marital residence, or upon the sale of the marital residence, whichever occurs first." (Article II, Section 2.2(b), paragraph 10, page 8);

D. "The balance of $67,745.50 shall be set off to Wife by virtue of a Qualified Domestic Relations Order from Husband's 401(k) account." (Article II, Section 2.2(b), paragraph 10, page 8);

3. That [Husband] paid the initial sum of $50,000.00 to [Wife] and this Court entered a Qualified Domestic Relations Order transferring $67,745.50 to [Wife] from [Husband's] 401(k) account.

4. That [Husband] has never paid the final payment of $50,000.00 to [Wife] as required by the Decree of Dissolution of Marriage.

5. That on May 3, 2006, [Husband] transferred the marital residence [hereafter "the Real Estate")] to his parents, Kenneth Lobb and Elsie Lobb, Third Party Defendants, (hereafter "Kenneth [and] Elsie").

6. That Kenneth [and] Elsie refinanced the Real Estate mortgage loan which was a lien on the marital residence at the time of the Decree of Dissolution of Marriage but did not pay in money or monies worth anything of value to [Hus-

---

5. On Schedule A only of the title insurance policy, April 26 is written above the April 14 effective date. Whether the effective date was April 14 or April 26 is of no moment on the particular facts before us.

6. A copy of the motion to dismiss is not contained in the record on appeal.

band] in consideration for the transfer of title of said Real Estate by [Husband].

7. That the fair market value of the Real Estate was in excess of the amount due on the refinanced mortgage but the Parties disagree as to the fair market value on the Real Estate on the date of refinancing.

8. That [Husband] was insolvent after he transferred title to the marital residence to Kenneth [and] Elsie, the only thing of value remaining in his name being his 401(k) savings account with his employer; that said account could not be liquidated because of the back[-]up withholding and withdrawal penalty to be imposed by the Internal Revenue Service which would reduce the value of said account below the $50,000 sum owed to Wife.

9. *That the final payment of $50,000.00 owed by [Husband] to [Wife] was a judgment lien on the marital Real Estate and its existence was known to Kenneth [and] Elsie when they accepted title to the marital residence from [Husband].*

10. That a second judgment lien on the marital residence in the sum of $3,000.00, existed in favor of C. Thomas Billings, Attorney at Law ("Billings"), [Wife's] trial attorney[.] (Article II, Section 2.6, page 10).

11. That Kenneth [and] Elsie paid the judgment lien owing to Billings when they received title to the marital residence from [Husband] but failed failed [sic] to pay the judgment lien owing to [Wife] when they received title to the marital residence from Kevin.

12. That the certified copy of the business records produced by Title First Agency, the title company employed by Kenneth [and] Elsie to close the transfer of title for the marital residence, contains the following documents which es-

tablish that Kenneth [and] Elsie were fully aware of the claim by [Wife] of $50,000.00 and its status as a judgment lien on the marital residence, said documents being:

A. The "Decree of Dissolution of Marriage" dated July 12, 2005;

B. The "Order to Appear at Hearing upon Proceedings Supplemental" dated November 3, 2005;

C. The "Commitment for Title Insurance, Schedule B–Section II Commitment No. 1313112 Effective Date; April 14, 2006" which provided "the policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company[;"]

1. "Defects, liens, encumbrance's [sic], adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this commitment."

13. That on March 19, 2007, [Wife] filed her "Complaint for Foreclosure" in this Court which recited the foregoing facts and circumstances and requested that this Court grant the following relief:

A. Enter a Declaratory Judgment that she is the owner of a Judgment Lien which is a first and prior lien on the Real Estate;

B. Enter a Judgment of Foreclosure, in rem, and directing the Sheriff of Hancock County, Indiana to sell the Real Estate and apply the proceeds to her judgment as a first and a prior lien;

C. Enter a Judgment that the transfer of the Real Estate by [Husband]

to Kenneth and Elsie was a fraudulent transfer under I.C. 32–18–2–1 et seq. and the attempted transfer to Kenneth and Elsie is voided;

D. Enter a judgment entering an appropriate award of damages in the sum of $50,000.00, an award of treble damages, costs, and reasonable attorney fees pursuant to I.C. 34–24–3[ ] et seq.

14. That [Wife] has been required to retain counsel to assist her in the collection of her judgment lien.

And the Court, having made the foregoing Findings of Fact now makes the following

## CONCLUSIONS OF LAW

1. That from the date of the entry of the Decree of Dissolution of Marriage on July 5, 2005, [sic] until paid, Melissa is the owner of a Judgment Lien against [Husband] in the sum of $50,000.00.

2. That as of July 12, 2008, the balance due to [Wife] on her Judgment Lien will be $61,000.00, $50,000.00 in principal plus $16,000.00 in judgment interest (8% per annum for three years).

3. That [Wife's] Judgment Lien was prior in time and therefore prior in right to the title to the Real Estate obtained by Kenneth and Elsie from [Husband] on May 3, 2006.

4. *That Kenneth and Elsie had actual knowledge of the existence of [Wife's] Judgment Lien and are not bona fide purchasers without notice.*

5. That any mortgage obtained by Kenneth and Elsie on the Real Estate which was recorded after July 12, 2006,

is junior to and therefore inferior in right to [Wife's] Judgment lien.

6. That [Wife] is entitled to recover the sum of $3,000.00 in attorney fees from the sale proceeds of the Real Estate.

And the Court, having made the foregoing Findings of Fact and Conclusions of Law and now being duly and sufficiently advised in the premises now makes the following

## JUDGMENT

1. That the Real Estate shall be sold by the Sheriff of Hancock County, Indiana at public sale after due notice as required by law to the highest bidder and the proceeds of sale shall be apportioned as follows:

A. To the costs of sale to include advertising thereof;

B. The sum of $61,000.00 to [Wife] in satisfaction of her judgment lien;

C. The sum of $3,000.00 to [Wife] as attorney fees;

D. To the Clerk of this Court for ultimate distribution to any party which establishes a lawful right to said proceeds.

*Id.* (emphases added).

On August 14, 2008, the Lobbs filed a motion to correct error, and on December 12 they filed a brief in support of that motion.[7] The court denied that motion. The Lobbs now appeal.

## DISCUSSION AND DECISION[8]

■ The Lobbs contend that the money judgment awarded to Wife in the Decree

7. The parties have not included a copy of the Lobbs' brief in support of the motion to correct error in the record on appeal.

8. Neither the Lobbs nor Wife has provided any citations to the record in support of their

respective arguments in the briefs on appeal. Indiana Appellate Rule 46(A)(8)(a) requires such citations, and the failure to comply with the rule hinders our review. We respectfully remind counsel to comply with that rule in the future.

does not constitute a judgment lien. Specifically, the Lobbs maintain that there was no judgment lien because "[t]here was no recording of the Divorce Decree by [Wife] with either the Hancock County Clerk's Office or the Hancock County Recorder's Office." Appellants' Brief at 6. A review of the record shows the Lobbs' contention to be incorrect.

 A judgment lien is purely statutory. *ABN AMRO Mortgage Group, Inc. v. Am. Residential Servs., LLC,* 845 N.E.2d 209, 216 (Ind.Ct.App.2006). Indiana Code Section 34–55–9–2 provides that "[a]ll final judgments for the recovery of money or costs ... constitute a lien upon real estate and chattels real liable to execution in the county where the judgment had been duly and [sic] entered and indexed...." In *Franklin Bank and Trust Co. v. Reed,* 508 N.E.2d 1256 (Ind.1987), *reh'g denied,* our Supreme Court determined that where one spouse is ordered to pay the other spouse money in installments, such final judgment automatically creates a judgment lien, "except where the exercise of the court's discretion would specifically eliminate it." *Reed,* 508 N.E.2d at 1259. Indiana Code Section 31–15–7–8 provides that upon entering an order for disposition of property, the dissolution court "may provide for the security, bond, or other guarantee that is satisfactory to the court to secure the division of property." The court, however, "may exercise its inherent power and eliminate a judgment lien only by positive action." *Id.*

Here, the dissolution court entered the Decree on July 15, 2005. The Lobbs do not dispute that the Decree contains a money judgment in favor of Wife and against Husband in the amount of $167,745.50 and that they were aware of that provision before they purchased the former marital residence. Nor do the Lobbs challenge the court's finding in the Foreclosure Judgment that they were aware that Husband had not fully paid that money judgment when they took title to the former marital residence. Instead, the Lobbs contend only that Wife "never recorded the divorce decree or any judgment from the divorce decree on the property of [Husband]." *Id.* at 7. But "upon a decision of the court, the court shall promptly prepare and sign the judgment, and *the clerk shall thereupon enter the judgment in the Record of Judgments and Orders* [('RJO')]...." Ind. Trial Rule 58(A) (emphasis added). In other words, entry of the Decree in the RJO is a ministerial act to be performed by the Clerk. The RJO, also commonly known as the judgment docket, is controlled by the Clerk, not by the parties. Wife was not required to cause the Decree to be entered in the RJO.

The title insurance commitment from Title First does not mention the Decree.[9] But Title First's business records include a "Judgment Search" worksheet. In a section entitled "Judgment Detail," the worksheet lists "Decree 7–15–05" followed on the same line by the notation "Attorney's Lien 8–25–05 Pro Sup" and on the following line by " \*Hearing 2–25–16\* 11–1–05[.]" Appellee's App. at 30. These notations in Title First's records suggest that Title First located the Decree in its judgment search.[10]

9. We express no opinion whether the Lobbs were misinformed or Title First erred when it did not show the terms of the Decree as an exception in the commitment for title insurance.

10. The parties have not included a copy of the RJO in the record on appeal, nor does either party clarify whether the Decree was ever entered in the RJO. We cannot speculate as to how Title First learned of the Decree. Regardless, as discussed below, the Lobbs had

■ But, here, the controlling and dispositive fact is that the Lobbs had actual notice of Wife's judgment lien. Before buying the former marital residence, Kenneth Lobb had a copy of the Decree and knew that the Decree awarded Wife $167,745.50. Kenneth Lobb paid to Wife on behalf of Husband the $50,000 awarded to her under the Decree for her execution of the quitclaim deed. And he was aware that the Decree ordered Husband to pay Wife an additional $50,000 within ninety days of her vacation of the former marital residence. A person with actual notice is bound by the terms of a valid instrument, even when that instrument has not been recorded so as to provide constructive notice. *See Keybank N.A. v. NBD Bank,* 699 N.E.2d 322, 327 (Ind.1998). Because the Lobbs had actual notice of the unpaid order to pay Wife money in the Decree, they are bound by the Decree. *See id.*

At trial and on appeal, Kenneth Lobb testified that he did not pay Wife the second $50,000 installment upon closing on the purchase of the former marital residence because Wife did not have a judgment lien. In particular, Kenneth Lobb testified that Title First told him that the attorney's lien was the only outstanding judgment, and part of the purchase price was used to pay the attorney's lien. But our review of the record on appeal shows that the attorney's lien had not been recorded in any manner other than by its inclusion in the Decree. While Title First's judgment search did not specifically mention the judgment for Wife in the Decree, the search included the Decree.

The Lobbs' purported reliance on Title First's failure to specifically note Wife's judgment lien is misplaced. The Lobbs were fully aware of the second $50,000 award to Wife in the Decree. And, as we have noted, while the record does not disclose whether the clerk entered the Decree in the RJO, the evidence shows that Title First listed the Decree in its judgment search.

We conclude that on these facts, as a matter of law, it was unnecessary for the Decree to have been entered in the Record of Judgments and Orders for the award in favor of Wife to have been a judgment lien on the property enforceable against the Lobbs. Again, "where one spouse is ordered to pay the other spouse money in installments, such final judgment automatically creates a judgment lien, 'except where the exercise of the court's discretion would specifically eliminate it.'" *Reed,* 508 N.E.2d at 1259. The dissolution court here took no steps to eliminate the creation of a lien. And the Lobbs had actual notice of the Decree's money judgment in favor of Wife and that Husband had not paid all of that judgment. Thus, the unpaid award in the Decree constitutes a judgment lien in favor of Wife enforceable against the Lobbs. The Lobbs' contention to the contrary must fail.[11]

Affirmed.

KIRSCH, J., and BARNES, J., concur.

---

actual knowledge of the Decree, its order for Husband to pay Wife $167,745.50, and the fact that Husband had not paid $50,000 on that judgment.

11. The Lobbs also contend that they purchased the former marital residence as bona fide purchasers without notice and without any fraudulent intent and, as such, that an execution levy is ineffective as to them due to the lack of a lis pendens notice. But, again,

the Lobbs had actual notice that Husband still owed Wife an additional $50,000 under the Decree. Therefore, they are not bona fide purchasers and, thus, they have not shown that they are exempt from execution levy. In sum, this case does not involve a good faith purchaser of the property for value and without notice, and our holding is limited to situations in which the purchaser of the property has actual knowledge of the unsatisfied judgment lien.