Roger CURRY and Carol Curry, Appellants (Plaintiffs Below),

v.

J. William ORWIG and Jane A. Orwig, Appellees (Defendants Below).

No. 1–880A200.

Court of Appeals of Indiana, First District.

Dec. 21, 1981.

Rehearing Denied Feb. 4, 1982.

Len E. Bunger, William K. Steger, Bunger, Harrell & Robertson, Bloomington, for appellants.

Scott E. Fore, Grodner & Fore, Bloomington, for appellees.

ROBERTSON, Judge.

Roger and Carol Curry (Currys) appeal the trial court's negative judgment in a slander of title action against J. William Orwig and Jane A. Orwig (Orwigs).

This slander of title suit is the outgrowth of a declaratory action between the parties. In that suit, the Orwigs sought to determine their rights to a private easement, Heritage Woods Road, granted by the Currys in an exclusive residential area in Bloomington. At the time they filed the declaratory complaint, Orwigs also filed a lis pendens notice. The notice read:

> Notice is hereby given that the plaintiffs in the above entitled cause have filed their complaint against the above-named defendants for a Declaratory Judgment regarding title to an easement and the proposed extension of said easement across the following described real estate in the County of Monroe, State of Indiana, to-wit:
>
> Part of the Northwest quarter of Section 6, Township 8 North, Range 1 East, and part of the Southwest quarter of Section 6, Township 8 North, Range 1 East, and part of the Southeast quarter of Section 6, Township 8 North, Range 1 East—containing altogether 299.5 acres more or less.

Filed and recorded this 17 day of December, 1968.

Subsequently, the Currys attempted to sell part of the land covered by the lis pendens notice and were unable to complete the sale because the purchasers could not obtain financing or title insurance. The Currys then filed this action for slander of title.[1] After a delay of twelve years, the case was tried on the following issues: 1) Whether the lis pendens notice was false, that is whether the interpretation of the easement gave Orwigs any right to or interest in the 299.5 acres covered by the notice; 2) Whether the allegations in Orwigs' declaratory complaint were sufficiently related to the 299.5 acres such that the lis pendens notice was privileged; 3) Whether the lis pendens notice was filed with malice that is did Orwigs file it with probable cause and in good faith; 4) Did Orwigs have an affirmative duty to correct the lis pendens notice, if it was incorrect and if Orwigs acquired notice of the defect?

The trial court entered judgment for the Orwigs. The trial court held that the Orwigs had a legal justification for filing the lis pendens notice because of the controversy about the interpretation of the easement, because of confusion about the location of the proposed extension of it, and because of their concern about the extension's impact on their neighborhood.

The trial court based this judgment on specific findings of fact, which were:

1. The Defendants, at the time of the filing of the Complaint for Declaratory Judgment and the Lis Pendens Notice, lived on Heritage Woods Road.

2. Heritage Woods Road did then, and does now, end in a cul de sac.

3. Heritage Woods Road is owned by the Plaintiffs who have conveyed an easement over the road to the Defendants.

4. A controversy arose concerning the interpretation of the easement and the proposed extension of Heritage Woods Road into proposed Heritage Woods East Addition and the surrounding property, resulting in the Defendants filing their Complaint and Lis Pendens Notice.

5. Exhibit B, the more recent plat of the Heritage Woods East Addition describes the Addition as part of the northwest quarter of Section G[6], Township 8 North; Range 1 East of Monroe County, Indiana.

6. Exhibit 2, the preliminary plat of the same Addition describes it as part of the southeast quarter and part of the southwest quarter of the northeast quarter and part of the northeast quarter of the southwest quarter and part of the northwest quarter of the southeast quarter of Section G[6], Township 8 North, Range 1 East of Monroe County, Indiana.

7. The Lis Pendens Notice covers the northwest, southwest and southeast quarter section of the same Section G[6].

8. No legal description of the proposed Heritage Woods East Addition has ever been prepared.

9. The more recent plat of the proposed Addition, Exhibit B, shows Heritage Woods Road ending in a cul de sac adjacent to unplatted property owned by Plaintiffs in this case.

The original Heritage Woods subdivision was developed, beginning in 1959, by the Currys and the Bryan Corporation. The area was to be an exclusive residential community. To accomplish this goal, all residents were required to enter into an agreement with the developers which restricted the types of homes that could be built, provided that yards had to be maintained to certain standards, restricted sewage and trash disposal, limited on street parking, provided for road maintenance, and gave first refusal rights to the community. The stated goal of the document was to insure the community's character and enhance property values. This document contained a detailed legal description of the subdivision, but was unrecorded.

---

1. The elements of slander of title are:

1) the statements made regarding title must have been false; 2) they must have been made maliciously; 3) they must have caused the plaintiff pecuniary loss. 18 I.L.E. *Libel and Slander* § 2 (1959). The issue of damages was reserved in this case.

The road mentioned in that document, Heritage Woods Road, is a strip of land which runs east-west through the development. Currys and the Bryan Corporation retained title to this land and granted the residents an ingress and egress easement. The deeds to the easement were recorded with specific legal descriptions.

Orwigs purchased their lot in Heritage Woods in 1963. At that time, Heritage Woods Road ended in a turn around, constructed by the plaintiffs, which the Orwigs understood was the permanent end of the road. The Currys maintain that they always made clear their intention to develop the land to the east of Heritage Woods if it became available, but not land to the south, as evidenced by an explanatory memorandum sent to residents in 1966.

Subsequently, in early 1968, the Currys and the Bryan Corporation acquired the land to the east of Heritage Woods and drew up plans for a subdivision to be known as Heritage Woods East. This development was to be similar to the original one. The Currys envisioned extending Heritage Woods Road into this area. The Orwigs and other residents of Heritage Woods were concerned that increased traffic on the road would alter the character of their neighborhood, in violation of their easement rights.

The proposed subdivision was platted for presentation to the Monroe County Plan Commission in 1968. The matter was complicated because the original plat referred to a different description of the new project than a subsequent plat. No precise legal description was ever filed. The trial court's findings of fact, numbered 5 and 6, refer to this discrepancy. The Currys and the Bryan Corporation were aware of the residents' concern and sent a letter in September 1968, explaining that they intended to develop the land east of Heritage Woods, but not the area to the south known as the Curry-Bryan farm. Despite these assurances, the Orwigs and other residents were concerned that expansion to the south would also occur. Finally, in December, 1968, the Orwigs filed their declaratory action and the lis pendens notice.

The lis pendens notice refers to both descriptions from the plats for Heritage Woods East and includes the Curry-Bryan farm to the south of Heritage Woods. The land which the Currys attempted to sell is located on the Curry-Bryan farm.

On appeal, the Currys essentially argue that the trial court's decision is contrary to law because any "interest" which the Orwigs had was not within the bounds of the lis pendens statute, *Ind.Code* 34–1–4–2, which specifies in relevant part that:

When ever any person shall have commenced a suit in any of the courts of this state, or in a district court of the United States, sitting in the state of Indiana, whether by complaint as plaintiff, or by cross-complaint as defendant, *to enforce any lien upon, right to, or interest in, any real estate, upon any claim not founded upon an instrument executed by the party having the legal title to such real estate, as appears from the proper records of such county*, and recorded as by law required; or not founded upon a judgment of record in the county wherein such real estate is situated, against the party having the legal title to such real estate, as appears from such proper records, it shall be the duty of such person to file with the clerk of the circuit court in each county where the real estate sought to be affected is situated, a written notice containing the title of the court, the names of all the parties to such suit, a description of the real estate to be affected, and the nature of the lien, right, or interest sought to be enforced against the same . . . .

Currys argue that the statute was intended to apply only to legal or equitable interests affecting title to realty, not based upon recorded documents. They claim Orwigs' "interest" does not satisfy these criteria because there is nothing to show an interest in title. Currys contend that any interest which the Orwigs had arose from three documents: 1) the recorded deed to the easement; 2) the unrecorded agreement between the Currys, as grantors-developers, and the Orwigs, as residents-buyers; and 3)

the deed coveying Orwigs property to them. Therefore, the Currys argue that a proper lis pendens notice should have referred to the legal descriptions contained in these documents. They also note that if the easement deed is the only source of Orwigs rights, no lis pendens notice was proper because the document was recorded. The Currys draw the conclusion that the trial court's findings of fact are irrelevant because they do not reflect the necessary interest to satisfy IC 34–1–4–2.

The Currys also argue that the Orwigs' lack of an interest in the property described in the lis pendens notice overcomes any claim of privilege which might protect Orwigs. They assert this is true under *Stahl v. Kincade*, (1963) Ind.App., 192 N.E.2d 493, a case for libel based upon statements in a counter-claim. In that case, this court recognized that ordinarily actionable statements are absolutely privileged when made in the course of judicial proceedings. However, this rule was qualified by the requirement that such statements must be relevant to the litigation. Indiana's courts have not dealt with privilege in regard to a lis pendens notice. Currys argue that the same result will be reached even under the primary case which the Orwigs rely on, *Albertson v. Raboff*, (1956) 46 Cal.2d 375, 295 P.2d 405. In that case, Judge Traynor extended privilege to lis pendens notices on the theory that they are simply republications of the pleadings. Currys argue that Orwigs declaratory complaint clearly indicates the suit involved title to the easement whereas the lis pendens notice implies an interest in the described property and is not a republication of the complaint.

The Currys apply similar reasoning to conclude that Orwigs made the statements in the lis pendens notice with malice.

When reviewing a claim which has been tried to the court, and where the trial court has made specific findings of fact, we may not reverse the trial court's decision unless when it is clearly erroneous. *Glasgo v. Glasgo*, (1981) Ind.App., 410 N.E.2d 1325; *Central Indiana Carpenters Welfare v. Ellis*, (1980) Ind.App., 412 N.E.2d 865. Fur-

thermore, we will not weigh the evidence or judge the credibility of witnesses, instead we consider only the evidence favorable to the judgment and all reasonable inferences drawn from it. If there is evidence of probative value to support the trial court's decision, it will be affirmed. *Central Indiana Carpenters Welfare v. Ellis, supra.*

The Currys argue that the trial court's findings of fact do not support its decision. It is true the trial court's findings of fact do not precisely parallel the issues on which the case was tried, but reading the findings as a whole, it is clear that the Orwigs were attempting to determine and protect their rights in the Heritage Woods Road easement. This problem was complicated because of the confusion about the exact location of the new Heritage Woods East addition. An examination of the evidence underlying the findings of fact supports the trial court's conclusion of law that the Orwigs had a legal justification for filing the lis pendens notice. This conclusion necessarily implies that the Orwigs had probable cause to believe they had an interest in the land covered by the lis pendens notice and therefore, that the statements in the lis pendens notice were privileged.

The focal point of this case is the question of what constitutes "an interest in real estate" under the lis pendens statute, IC 34–1–4–2. The statute has not been the subject of extensive interpretation. In the single recent case, *State v. Cox*, (1978) Ind. App., 377 N.E.2d 1389, this court concluded that the State was not required to file a lis pendens notice in order to give third party purchasers of realty notice of a judgment lien because the judgment would be recorded and because the lis pendens statute specifically excludes judgment liens. We have found no cases which define what an "interest" is for purposes of the statute.

The statute is intended to apply to *in rem* interests in real estate as stated in 4 W. Harvey and R. B. Townsend, Indiana Practice § 63.1 B at 340 (1971):

The purpose of lis pendens notice is to provide machinery whereby a person with

an in rem claim to property *which is not otherwise recorded* or perfected may put his claim upon the public records, so that third persons dealing with the defendant . . . will have constructive notice of it. (Original emphasis.)

*See generally,* 54 C.J.S. Lis Pendens § 23 (1948).

The most frequent examples, and the clearest examples, of a proper lis pendens notice occur in situations where the plaintiff is asserting a claim to the title of real estate under an unrecorded deed or attempting to foreclose an unrecorded mortgage. *E.g. Fountain Trust Co., Rec. v. Rinker,* (1932) 98 Ind.App. 249, 182 N.E. 709; *Pennington v. Martin,* (1897) 146 Ind. 635, 45 N.E. 1111.

The opposite end of the spectrum is reached when a plaintiff files a lis pendens notice while asserting a personal claim against a defendant. For example, other courts have been faced with cases where a party alleging breach of contract for services involving realty has filed a lis pendens notice against the property and held that the claim is personal against the defaulting party until a judgment lien is entered. *Rehnberg v. Minnesota Homes,* (1952) 236 Minn. 230, 52 N.W.2d 454.

The case at bar is unique. It clearly does not involve just personal rights. At first glance, it might also appear that the Orwigs have no connection with the property described in the lis pendens notice. Their *in rem* claim involves the easement. However, it is important to look at what the actual impact of the new addition could be. In effect, the Currys were going to convey rights in the Heritage Woods Road easement to purchasers in the new addition as part and parcel of their lots. In relation to these new purchasers the deeds conveying the original easement in Heritage Woods to the Orwigs and their neighbors would not be recorded and would not appear in the chain of title for lots in the new Heritage Woods East addition. Likewise, the unrecorded restrictive covenant, among the Orwigs, their neighbors, and the Currys, which was part of the foundation for Orwigs' declaratory complaint, would not appear in the chain of title for the lots in the new addition.

■■ Again, it is important to remember that by selling the lots in Heritage Woods East with easement rights, the Currys would actually be conveying interests in the original easement which would potentially conflict with Orwigs' rights. The only way in which the Orwigs could put third parties on notice of their rights was by filing the lis pendens notice.

The Currys argue that if they improperly conveyed easement rights to purchasers in the new addition, they would be liable to these purchasers for breach of contract. They conclude that this would not affect the Orwigs or their rights in the original easement. This is a somewhat artificial approach. It is not difficult to imagine that lot owners in Heritage Woods East would be more concerned about access to the existing road through Heritage Woods than they would be about a breach of contract suit. Given the terrain surrounding the new addition, they might arguably proceed on the theory of an easement by implication or necessity. *See generally, State v. Innkeepers of New Castle, Inc.,* (1978) Ind. App., 375 N.E.2d 1129 (transfer granted) (1979) Ind., 392 N.E.2d 459; *John Hancock Mut. Life Ins. Co. v. Patterson,* (1885) 103 Ind. 582, 2 N.E. 188; *State v. Orcutt,* (1936) 211 Ind. 523, 199 N.E. 595; 25 Am.Jur.2d Easement and Licenses § 24–38 (1966).

For these reasons, we find that Orwigs had a sufficient interest to justify filing the lis pendens notice. Turning to the propriety of the scope of the description in the lis pendens notice, the trial court's findings of fact, numbered 5 through 8, which concern the discrepancies between the two preliminary plats for Heritage Woods East and the lack of a legal description for this addition, support the trial court's conclusion that confusion over the exact location of Heritage Woods East justified the lis pendens notice as filed. There is evidence to the contrary indicating Currys did not intend to develop the land immediately south of Heritage Woods, however, we are not led to the

conclusion that the trial court's findings are clearly erroneous.

 Because we have concluded the Orwigs' had a sufficient interest to justify filing the lis pendens notice, it follows that the notice is privileged under the rational of *Stahl v. Kincade, supra.* Therefore the trial court's judgment is affirmed.

Judgment affirmed.

RATLIFF, J., concurs.

BUCHANAN, C. J., (sitting by designation) concurs.