# FOR PUBLICATION



FILED
Oct 22 2014, 10:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**J. DUSTIN SMITH**
Plunkett Cooney, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**WHITNEY L. MOSBY**
**KARL L. MULVANEY**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Appellant-Intervenor, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1402-MF-65 |
| | ) | |
| CLAYBRIDGE HOMEOWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEBORAH M. WALTON, et al., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-0801-MF-31

**October 22, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

JPMorgan Chase Bank, N.A., ("JPMorgan") appeals the trial court's order of January 16, 2014, denying its December 19, 2013 "Combined Motion to Intervene, to Stay January 9, 2014 Sheriff Sale, to Vacate Order of Sale, to Vacate the May 27, 2010 Summary Judgment and Decree of Foreclosure, and Request for Expedited Hearing on Motion." Appellant's Appendix at 1. JPMorgan raises three issues, which we consolidate and restate as whether the court erred in denying its motion. We reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

In October 2001, Claybridge Homeowners Association, Inc., ("Claybridge") filed a complaint against Deborah Walton, who lived in a house located on certain real property (the "Real Estate") in the Claybridge subdivision in Hamilton County. Walton v. Claybridge Homeowners Ass'n, Inc., No. 29A05-1006-MF-399, slip op. at 1 (Ind. Ct. App. Jan. 20, 2011) (the "2011 Opinion"), trans. denied. Deborah later filed a counterclaim against Claybridge. Id. In 2002, Claybridge obtained an injunction against Deborah to prevent her from interfering with Claybridge's performance of duties under the subdivision's covenants.[2] Id.

On July 15, 2004, the trial court entered an order awarding damages to Claybridge in the amount of $248 for damages, $64,600 for attorney fees, and the cost of suit in the action against Deborah.[3] Id. The court declined to enter a final judgment because

---

[1] We issue a decision today in the related cause of Margaret Walton v. Claybridge Homeowners Ass'n, Inc., No. 29A04-1402-MF-87 (Ind. Ct. App. Oct. 22, 2014). As referenced below, there have been a number of previous appeals in the litigation involving the property at issue in this case.

[2] This court affirmed the issuance of the injunction. 2011 Opinion at 1 n.2 (citing Walton v. Claybridge Homeowners Ass'n, No. 29A04-0207-CV-348 (Ind. Ct. App. July 15, 2003), trans. denied).

[3] This court affirmed the attorney fees award. 2011 Opinion at 1 n.3 (citing Walton v. Claybridge Homeowners Ass'n, 825 N.E.2d 818, 826 (Ind. Ct. App. 2005)).

Deborah's counterclaim was pending. Id. On December 4, 2006, the court entered judgment in favor of Claybridge on Deborah's counterclaim.[4] Id.

On January 16, 2007, the trial court entered an order (the "January 2007 Order") entitled "Order Vacating Hearing on Additional Attorneys Fees and Certification of Final Judgment," which stated as follows:

> Comes now the Court upon the Motion of Claybridge [] to vacate the hearing on its request for additional attorneys fees and to designated [sic] this matter as a final judgment.
>
> The Court, having considered said motion and being duly advised in the premises, now finds that such motion should be and hereby is GRANTED.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the hearing set for January 17, 2007, is VACATED. This Order shall not affect the prior award of damages, trial court and appellate attorney fees, nor shall this Order prevent Claybridge [] from seeking additional collection costs in enforcing the prior award of attorney fees or pre and post judgment interest. This Court further certifies this matter as a final judgment pursuant to Ind. T.R. 58.

Appellee's Appendix at 70-71. This Order was not entered in the trial court's judgment docket. 2011 Opinion at 3. At the time, the recorded deed reflecting the owner of the Real Estate was a quitclaim deed (the "2001 Quitclaim Deed") dated June 27, 2001, and recorded with the Hamilton County Recorder on July 10, 2001, conveying the Real Estate to Deborah. A quitclaim deed (the "2007 Quitclaim Deed") dated June 28, 2001, was recorded with the Hamilton County Recorder on April 12, 2007. Deborah conveyed the

---

[4] This court affirmed that judgment. See 2011 Opinion at 1 n.4 (citing Walton v. Claybridge Homeowners Ass'n., No. 29A04-0701-CV-44 (Ind. Ct. App. Oct. 19, 2007), trans. denied). There was another appeal, between Deborah and her title insurer, also related to this litigation. Id. at 1 n.1 (citing Walton v. First Am. Title Ins. Co., 844 N.E.2d 143 (Ind. Ct. App. 2006), trans. denied).

Real Estate by the 2007 Quitclaim Deed to herself and her mother Margaret as joint tenants with rights of survivorship.

On October 30, 2007, Claybridge filed a Complaint to Foreclose Judicial Lien (the "Foreclosure Complaint") alleging that the court's July 15, 2004 order was a valid lien against the Real Estate and that it was entitled to enforce its terms. Id. The Foreclosure Complaint named a number of defendants, including Margaret, Fifth Third Mortgage Company ("Fifth Third"), which had recorded a mortgage on the Real Estate on April 11, 2006 (the "Fifth Third Mortgage"), and First Indiana Bank, N.A. ("First Indiana"), which had recorded a mortgage on the Real Estate on June 16, 2006 (the "First Indiana Mortgage").[5] Id. The Foreclosure Complaint alleged in part:

9.  Margaret is named as a defendant in this proceeding to answer as to any interest which she may have in the Real Estate as a result of the [2007 Quitclaim Deed] dated June 28, 2001, and recorded on or about April 12, 2007, as Instrument No. 2007-020527 in the Office of Hamilton County, Indiana. The interest of Margaret, if any, is inferior and subordinate to that of Claybridge.

10. [Fifth Third] is named as a defendant to answer as to any interest it may claim in the Real Estate as the result of a Mortgage dated March 22, 2006, and recorded April 11, 2006, by and between Deborah and American Fidelity Mortgage, Inc. which Mortgage [(the "Fifth Third Mortgage")] was assigned to [Fifth Third] by way of an Assignment recorded on or about April 11, 2006, as Instrument No. 2006-19263. The interest of [Fifth Third], if any, is inferior and subordinate to that of Claybridge.

Appellee's Appendix at 2-3. Claybridge requested that its judgment be declared a valid lien against the Real Estate, a judgment of foreclosure of the lien, and an order directing the sale of the Real Estate.

---

[5] The Foreclosure Complaint also named as defendants CitiBank (South Dakota), N.A., American Express Company, Affordable Home Renovations Inc., and Stewart Irwin, P.C.

Also on October 30, 2007, Claybridge filed a Lis Pendens Notice stating that it had filed a Foreclosure Complaint for foreclosure of a judicial lien in its favor which may result in a sale of the Real Estate. The Lis Pendens Notice, dated and file-stamped October 30, 2007, in the record includes a handwritten notation on the second page stating "Lp 10 pg 84." Appellant's Appendix at 79. The chronological case summary (the "CCS") indicates Deborah and Margaret were each personally served with the Foreclosure Complaint and a summons on November 7, 2007.

On November 13, 2007, Deborah and Margaret executed a promissory note in the amount of $473,000 in favor of Washington Mutual Bank, and the note was secured by a mortgage on the Real Estate, executed by Deborah and Margaret and recorded on November 27, 2007 (the "JPMorgan Mortgage").[6] JPMorgan, according to its December 19, 2013 motion to intervene discussed below, is the successor in interest to Washington Mutual Bank and the holder of the JPMorgan Mortgage.

Deborah and Margaret, by counsel, filed an Answer on May 8, 2009, in which they admitted that, on or about July 15, 2004, Deborah was the owner of the Real Estate, that on that date the court entered a judgment in favor of Claybridge and against Deborah, that the judgment was a valid lien against the Real Estate, and that Claybridge was the holder of the judgment.[7] On September 18, 2009, Claybridge filed a motion for summary

---

[6] JPMorgan attached to its motion to intervene a signed copy of a settlement statement in connection with the closing of the loan from Washington Mutual Bank on November 13, 2007. The settlement statement shows that the loan amount was $473,000 and that there was or would be a disbursement for the payoff of the Fifth Third Mortgage in the amount of $468,982.20.

[7] The Answer stated that Deborah and Margaret were without sufficient information to admit or deny the allegation in paragraph 9 of the Foreclosure Complaint.

judgment and a motion for default judgment and decree of foreclosure. Fifth Third did not appear or respond to the Foreclosure Complaint, the trial court issued an order of default judgment against Fifth Third with a file-stamped date of September 30, 2009, and the CCS does not indicate Fifth Third appealed the default judgment.[8] In January 2010, counsel for Deborah withdrew from the case and Deborah, *pro se*, subsequently moved to dismiss the Foreclosure Complaint on the basis that there was no valid, final judgment by which a judgment lien could have been established. 2011 Opinion at 1. The trial court, while agreeing that the July 15, 2004 order did not constitute a final judgment, nonetheless denied the motion to dismiss, noting the January 2007 Order. Id.

On May 19, 2010, the court signed an order, which was file-stamped on May 27, 2010, titled Summary Judgment Entry and Decree of Foreclosure in Favor of Claybridge (the "Foreclosure Decree"). The court entered summary judgment in favor of Claybridge and against Deborah, Margaret, and First Indiana, ordered a foreclosure sale of the Real Estate, and gave priority to Claybridge's judgment lien over the First Indiana Mortgage. Id. at 2. The Foreclosure Decree ordered in part:

1. That [Claybridge] be, and it hereby is, granted an *in rem* judgment against Deborah M. Walton, Margaret J. Walton, and First Indiana Bank, in the principal sum of $64,848.00, plus statutory interest from July 15, 2004 to and including the date of the entry of summary judgment, plus advances for real estate taxes, assessments, insurance premiums and any necessary expenses to preserve and protect the Real Estate [] incurred to date of Sheriff's sale and including court costs, together with continuing post judgment interest at the statutory rate, all without relief from valuation and appraisement laws.

2. That the [J]udgment [L]ien of [Claybridge] be, and hereby is, foreclosed as the first and prior lien and the equity of redemption of

---

[8] The court also entered default judgment against CitiBank, American Express, Affordable Home Renovations, and Stewart Irwin, P.C.

6

the defendants, Deborah M. Walton, Margaret J. Walton and First Indiana Bank, and all persons claiming under and through said defendant(s) is hereby foreclosed on the [Real Estate].

3. The Real Estate shall be sold by the Sheriff of this County to satisfy the sums found to be due [Claybridge] as soon as said sale can be had under the laws of this jurisdiction governing the sale of foreclosed property . . . .

Appellee's Appendix at 84-85.

Deborah appealed from the Foreclosure Decree and argued that there was no final judgment upon which a lien could have been based, that the January 2007 Order did not give rise to a lien that Claybridge was entitled to act upon, and that the trial court erred in ordering foreclosure of the lien, and this court affirmed. See 2011 Opinion at 2-6. Specifically, in our 2011 Opinion, we determined that "the trial court's final judgment of January 16, 2007 [the January 2007 Order], which . . . unmistakably incorporated the previous monetary award against [Deborah], clearly was sufficient to permit the establishment of a judgment lien against [her] interest in any real property in Hamilton County that could be foreclosed as to [her], or any other party who had actual notice of the judgment against her." Id. at 4. In August 2013, Claybridge requested a sale of the Real Estate, and it was scheduled to be sold by the Hamilton County Sheriff on January 9, 2014.

On December 19, 2013, JPMorgan filed a "Combined Motion to Intervene, to Stay January 9, 2014 Sheriff Sale, to Vacate Order of Sale, to Vacate the May 27, 2010 Summary Judgment and Decree of Foreclosure, and Request for Expedited Hearing on Motion." Appellant's Appendix at 1. JPMorgan argued it was entitled to intervene in the action in order to protect its interest in the Real Estate, that it received an interest in the Real Estate via the JPMorgan Mortgage which was assigned to it by Washington Mutual

7

Bank, that Claybridge failed to name JPMorgan or Washington Mutual Bank as a defendant, and that JPMorgan was at risk of having its interest in the Real Estate impaired because of the Foreclosure Decree and the fact the Real Estate was scheduled to be sold at a sheriff's sale. JPMorgan further argued that no other party adequately represented its interest and that its motion to intervene was timely because any delay in the filing of the motion was attributable to Claybridge's failure to name it in the action. JPMorgan asserted that the January 2007 Order never became a lien against the Real Estate because Claybridge failed to index the judgment on the Hamilton County judgment docket, as shown by an April 20, 2011 title commitment obtained by Claybridge,[9] and that Claybridge's Lis Pendens Notice was invalid because Claybridge never acquired a lien against third persons without actual knowledge and cannot rely on the notice to create an *in rem* interest in the Real Estate. JPMorgan also argued that Claybridge could only assert an interest in half of the Real Estate because as a joint tenant Deborah had only a one-half interest in the Real Estate, and the January 2007 Order obtained by Claybridge could become a lien only against Deborah's one-half interest.

---

[9] JPMorgan attached the April 20, 2011 title commitment to its motion identifying Claybridge as the proposed insured. Schedule A of the commitment stated that the land covered by the commitment was vested in Deborah and Margaret as joint tenants with rights of survivorship. Schedule B of the commitment listed requirements to be satisfied prior to the issuance of the policy and identified the judgments of Claybridge, Affordable Home Renovations, Fifth Third Bank, American Express, Stewart & Irwin, P.C., and Citibank. With respect to Claybridge, paragraph X of Schedule B provided: "Satisfaction and release of record of Judgment in Cause No. 29D04-0801-MF-000031, in the Hamilton, Superior Court, rendered May 27, 2010, against Deborah M. Walton, in favor of Claybridge Homeowners Association, Inc., in the amount of $64,848.00 and costs." Appellant's Appendix at 42-43. Schedule B also identified a federal tax lien against Deborah in the original amount of $53,574.71 together with penalty and interest.

JPMorgan's motion also attached a title commitment dated September 12, 2007, identifying Washington Mutual Bank as the proposed insured, and the commitment does not specifically list as an exception any judgment lien by Claybridge against the Real Estate.

8

On December 27, 2013, Claybridge filed a response to JPMorgan's motion to intervene. Claybridge argued that, according to the 2011 Opinion, although the January 2007 Order was never indexed in the Hamilton County judgment docket, it constituted a judgment lien on the Real Estate that could be foreclosed as to Deborah and any other party who had notice of the January 2007 Order. Claybridge asserted that JPMorgan was not entitled to intervene in the action because it had notice of the January 2007 Order and the foreclosure action and its motion was not timely. Specifically, Claybridge argued that it filed the Lis Pendens Notice on October 30, 2007, that the Lis Pendens Notice took effect two weeks before the JPMorgan Mortgage came into existence, and that therefore JPMorgan and its predecessors in interest took the JPMorgan Mortgage with notice of the January 2007 Order and the foreclosure action and were thus bound by the Foreclosure Decree. Claybridge also claimed the January 2007 Order applied to the entirety of the Real Estate. JPMorgan filed a reply on January 2, 2014. On January 8, 2014, the court stayed the scheduled sheriff's sale.

On January 10, 2014, the court held a hearing on JPMorgan's motion to intervene at which counsel for JPMorgan and Claybridge presented arguments.[10] Counsel for JPMorgan argued in part that, "[u]nfortunately, for what ever reason, that 2007 lis pendens doesn't show up on the public records," that the 2011 title commitment obtained by Claybridge "does not reflect a lis pendens against the property," and thus that JPMorgan "never had notice of the foreclosure action." January 10, 2014 Transcript at 7. Counsel for Claybridge argued that the evidence showed the Lis Pendens Notice "was filed and

---

[10] Deborah and Margaret were not present at the hearing.

9

recorded on the 30th day of October, 2007, at 4:00 p.m. And at the bottom right hand portion it says LP for lis pendens, 10, which would be lis pendens book 10, page 84. So the lis pendens was properly noted in the clerk's office." Id. at 15. Claybridge's counsel argued that, "[a]s to . . . the 2011 title work[,] I would respectfully submit it's not there because the Claybridge foreclosure action of it's [sic] judicial lien had already been reduced to judgment [so] there is no reason to have lis pendens anymore because the judgment has already been entered." Id. Claybridge's counsel further argued "[a]nd if we look at the title work that is attached to the plaintiff's motion we'll see on an exception 'X', which is under schedule B, . . . satisfaction and release of record of judgment in cause number 29D04-0801-MF," that "if the judgment has already been entered then the complaint and lis pendens, I respectfully submit, are subsumed into the judgment," and that "there is no reason why it should be listed."[11] Id. at 15-16. Claybridge's counsel also argued the Foreclosure Decree foreclosed the interest of Margaret, Margaret did not appeal, and thus there is no issue that the January 2007 Order did not apply to her interest in the Real Estate. The trial court asked if it was correct that there was "nothing in any of these exhibits or documents about the title search that was done by Washington Mutual," and the parties agreed that was correct. Id. at 30. The court stated that "I think it comes down to

_____

[11] The April 20, 2011 title commitment provided, under Schedule B, that "[t]he following are the requirements to be complied with prior to the issuance of said policy or policies," and paragraph X provided:

> Satisfaction and release of record of Judgment in Cause No. 29D04-0801-MF-000031, in the Hamilton, Superior Court, rendered May 27, 2010, against Deborah M. Walton, in favor of Claybridge Homeowners Association, Inc., in the amount of $64,848.00 and costs.

Appellant's Appendix at 42-43.

10

the notice, the lis pendens notice, which I think should have been picked up by Washington Mutual before they wrote or accepted the mortgage." Id.

On January 16, 2014, the court entered an order denying JPMorgan's December 19, 2013 motion to intervene. The court found that on October 30, 2007, Claybridge filed a Lis Pendens Notice with the Hamilton County Clerk providing notice of the January 2007 Order and pending foreclosure action, that on November 13, 2007, Deborah and Margaret refinanced the Fifth Third Mortgage on the Real Estate and executed a new mortgage to Washington Mutual Bank, and that JPMorgan is the holder of that mortgage. The court found that "JPMorgan had notice of this foreclosure action by virtue of the properly filed and valid Lis Pendens Notice." Appellant's Appendix at 96. The court found that JPMorgan's request to intervene six years after the filing of the Lis Pendens Notice was not timely. The court denied JPMorgan's request to intervene, ordered that JPMorgan took its interest in the Real Estate subject to the first lien of Claybridge, denied JPMorgan's request to vacate the Foreclosure Decree, and found that Claybridge had a judgment lien on the entirety of the Real Estate. JPMorgan filed a notice of appeal from the court's January 16, 2014 order denying its December 19, 2013 motion to intervene.[12]

## DISCUSSION

The issue is whether the trial court erred in denying JPMorgan's December 19, 2013 to intervene. In its motion, JPMorgan argued it was entitled to intervene in the action under Ind. Trial Rule 24(A). A trial court is required, as a matter of right, to grant a party's timely

---

[12] On January 31, 2014, Margaret, *pro se*, filed a motion for relief from the Foreclosure Decree, which the court denied. Margaret, *pro se*, filed a notice of appeal from the denial of her motion for relief from judgment. We issue a separate decision with respect to Margaret's appeal.

11

motion to intervene if the party shows (1) an interest in property which is the subject of the action, (2) that disposition of the action may practically impair that interest, and (3) that no existing party is adequately representing the moving party's interest. Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 812 (Ind. 2012) (citing Ind. Trial Rule 24(A)(2)), reh'g denied. The trial court has discretion to determine whether a prospective intervenor has met its burden. Id. Thus, we review the trial court's ruling on a motion to intervene for abuse of discretion and assume that all facts alleged in the motion are true. Id.

Because the concept of timeliness is flexible and its application depends upon the facts of each case, its determination must rest within the sound discretion of the trial court. Herdrich Petroleum Corp. v. Radford, 773 N.E.2d 319, 325 (Ind. Ct. App. 2002) (citing Bryant v. Lake Cnty. Trust Co., 166 Ind. App. 92, 101, 334 N.E.2d 730, 735 (1975)), reh'g denied, trans. denied. However, the requirement of timeliness should not be employed as a tool to sanction would-be intervenors who are tardy in making their application. Id. Rather, it is intended to insure that the original parties should not be prejudiced by an intervenor's failure to apply sooner, and that the orderly processes of the court are preserved. Id.

JPMorgan contends the court erred in denying its motion to intervene and argues that it has an interest in the Real Estate, that the foreclosure action may impair its interest, and that no other party is adequately representing its interest. It asserts that its motion was timely and that the January 2007 Order was not properly recorded on the judgment docket and therefore did not provide it with notice of Claybridge's interest. JPMorgan states that it "did not have actual notice of the foreclosure action until late 2013 when the [Real Estate]

12

was listed for sale." Appellant's Brief at 13. With respect to the October 30, 2007 Lis Pendens Notice, JPMorgan contends that the notice was defective and that "[t]here is no known case law to support the use of a lis pendens notice as a substitute for complying with statutory requisites to create a judgment lien." Id. at 12. It also argues that "not only did Claybridge not have a valid lien against the [Real Estate] at the time the lis pendens was filed, the lis pendens notice itself was incorrect" because it "indicates that it is attempting to foreclose a judicial lien, but there was no judicial lien to foreclose at the time the lis pendens was filed" and that a third party checking the public records "would not discover a judicial lien in favor of Claybridge." Id. at 12-13. JPMorgan further argues the court erred in determining Claybridge had a lien on the entirety of the Real Estate.

Claybridge contends JPMorgan's interest was adequately protected as Deborah attempted to use JPMorgan's interest as a means of attacking Claybridge's right to enforce the January 2007 Order, that Fifth Third had an interest in the Real Estate and adequately represented JPMorgan's interest, and that the fact Fifth Third did not defend the action does not change the analysis. Claybridge further posits that the court properly found that JPMorgan's motion to intervene was untimely. Claybridge argues there is nothing in the record to support JPMorgan's assertion that it did not have actual notice of the foreclosure action until it was listed for sale, and that Claybridge has a valid judgment lien on the Real Estate, pointing to the 2011 Opinion, and arguing the 2011 Opinion is the law of the case.

In addition, Claybridge contends that the Lis Pendens Notice was properly filed and provided notice of the foreclosure action to JPMorgan, and that if a lis pendens notice is properly filed, a subsequent purchaser will take the property subject to a judgment in the

pending claim. Claybridge argues that the October 30, 2007 Lis Pendens Notice met all of the requirements because it was based upon a suit to foreclose Claybridge's lien, it was filed with the Hamilton County Clerk, and it set forth the necessary information including the nature of its interest as a judgment lien. It further argues that, because the Lis Pendens Notice was filed two weeks before the JPMorgan Mortgage came into existence on November 13, 2007, the notice provided constructive notice to JPMorgan and its predecessors in interest that Claybridge was seeking to foreclose its judgment lien on the Real Estate. Claybridge also states, "[i]f the Hamilton County Clerk had properly indexed and recorded the Judgment Lien, Claybridge would have had no obligation to file the Lis Pendens Notice," that "[i]n that circumstance, JPMorgan would have had constructive notice of the foreclosure action from the commencement of the action itself as a matter of law," and that "[t]he fact that Claybridge filed the Lis Pendens Notice as a protective measure does not change its effectiveness and – in fact – was necessary to provide constructive notice to third parties due to the clerk's failure to enter and index the Judgment Lien." Appellee's Brief at 23. Its position is that JPMorgan had notice of the pending foreclosure action for over six years and its motion to intervene was untimely. With respect to JPMorgan's argument that "the Judgment Lien can only be asserted as to Deborah's alleged half ownership interest," Claybridge argues that JPMorgan does not have standing to assert the claims of Margaret and that, even if it did, Margaret's claims are untimely because her motion for relief was untimely under Trial Rule 60(B) and she did not assert a meritorious defense. Id. at 25.

In its reply brief, JPMorgan notes that it is undisputed that Claybridge obtained "a valid personal judgment against Deborah" but that "due to the personal judgment not having been indexed, Claybridge did not obtain a valid lien or interest in the Real Estate as against third parties without actual notice, such as JPMorgan." Appellant's Reply Brief at 4. It argues that "Claybridge equates having a personal judgment against Deborah [] with having an *in rem* interest in the real estate . . . ." Id. And, it maintains that "the lis pendens doctrine allows a person with an in rem interest in property that is not otherwise recorded to give notice to third parties." Id. (citing Nat'l City Bank Ind. v. Shortridge, 689 N.E.2d 1248, 1252 (Ind. 1997), supplemented sub nom., 691 N.E.2d 1210 (Ind. 1998)). JPMorgan further argues that, "[i]n order to gain an in rem interest in the [R]eal [E]state, Claybridge was required to ensure that the personal judgment was properly indexed on the judgment docket." Id. at 5.

ANALYSIS

We note that, with respect to the requirements of Ind. Trial Rule 24(A), JPMorgan has a security interest in the Real Estate under the JPMorgan Mortgage which may be impaired by the foreclosure action and any sale of the Real Estate. In addition, no existing party to the action adequately represents the interest of JPMorgan as Fifth Third is not a party to the action[13] and JPMorgan as a mortgagee has a security interest under the JPMorgan Mortgage with respect to any interest of Deborah as well as Margaret as a mortgagor in the Real Estate. See Ind. Trial Rule 24(A); Citimortgage, 975 N.E.2d at 812-

---

[13] The settlement statement attached to the motion to intervene indicates that proceeds from the loan from Washington Mutual Bank disbursed on November 13, 2007, were used in part to pay off a loan from Fifth Third, presumably secured by the Fifth Third Mortgage. Further, the trial court issued an order of default judgment against Fifth Third file-stamped on September 30, 2009.

813 (holding Citimortgage had a property interest at stake under a mortgage instrument, that disposition of the foreclosure case would impair that interest, and that no current party was representing Citimortgage's interest).

We now turn to whether JPMorgan's motion to intervene was timely. The trial court found that JPMorgan did not timely intervene, that it had notice of the foreclosure action "by virtue of the properly filed and valid Lis Pendens Notice," and that JPMorgan "took its interest in the Real Estate subject to the first lien of Claybridge." Appellant's Appendix at 96-97.

Indiana adheres to the doctrine of lis pendens, which literally means "pending suit." Mid-W. Fed. Sav. Bank v. Kerlin, 672 N.E.2d 82, 86 (Ind. Ct. App. 1996) (citing 19 I.L.E. *Lis Pendens* § 1 (1959)), reh'g denied, trans. denied. At common law, the doctrine of lis pendens provided that a person who acquired an interest in land during the pendency of an action concerning the title thereof took the property subject to any judgment later rendered in the action. Clarkson v. Neff, 878 N.E.2d 240, 243 (Ind. Ct. App. 2007) (citing Kerlin, 672 N.E.2d at 86), trans. denied. Commencement of the action itself was deemed to provide notice to the purchaser of the land. Id. "In the latter part of the nineteenth century, the legislature enacted lis pendens statutes that modified the common law rule." Id. "Briefly stated, the statutes require that a separate written notice of a pending suit be filed with the clerk of the circuit court of the county where the land is located in order for the action to affect the interests of any persons acquiring an interest in the land while the action was pending." Id.

> The purpose of lis pendens notice is to provide machinery whereby a person
> with an in rem claim to property which is not otherwise recorded or perfected

16

may put his claim upon the public records, so that third persons dealing with the defendant . . . will have constructive notice of it.

Id. (quoting Curry v. Orwig, 429 N.E.2d 268, 272-273 (Ind. Ct. App. 1981) (citation omitted), reh'g denied).

If a lis pendens notice is properly filed on the public records, a subsequent purchaser will take the property subject to a judgment in the pending claim. Id. at 244 (citing MDM Inv. v. City of Carmel, 740 N.E.2d 929, 934 n.3 (Ind. Ct. App. 2000)). To protect an interest in the property, the subsequent purchaser may either ensure that the grantor does not harm his rights or intervene in the action. Id.

Ind. Code § 32-30-11-3 provides in part:

(a)     This section applies to a person who commences a suit:

    (1)     in any court of Indiana or in a district court of the United States sitting in Indiana;

    (2)     by complaint as plaintiff or by cross-complaint as defendant; and

    (3)     to enforce any lien upon, right to, or interest in any real estate upon any claim not founded upon:

        (A)     an instrument executed by the party having the legal title to the real estate, as appears from the proper records of the county, and recorded as required by law; or

        (B)     a judgment of record in the county in which the real estate is located, against the party having the legal title to the real estate, as appears from the proper records.

(b)     The person shall file, with the clerk of the circuit court in each county where the real estate sought to be affected is located, a written notice containing:

(1)     the title of the court;

(2)     the names of all the parties to the suit;

(3)     a description of the real estate to be affected; and

(4)     the nature of the lien, right, or interest sought to be enforced against the real estate.

Claybridge claims the Lis Pendens Notice was effective to provide notice of the foreclosure action to JPMorgan. JPMorgan claims that the January 2007 Order was not properly recorded, the January 2007 Order was a valid personal judgment against Deborah but not an *in rem* interest in the Real Estate, and thus that the January 2007 Order and the Lis Pendens Notice were ineffective at providing constructive notice.

In <u>Curry v. Orwig</u>, this court addressed the question of what constitutes "an interest in real estate" under the lis pendens statute.[14] 429 N.E.2d at 272. <u>Curry</u> provided:

> The statute is intended to apply to in rem interests in real estate as stated in 4 W. Harvey and R. B. Townsend, Indiana Practice s 63.1 B at 340 (1971):
>
> > The purpose of lis pendens notice is to provide machinery whereby a person with an in rem claim to property which is not

---

[14] According to <u>Curry</u>, at the time Ind. Code § 34-1-4-2 provided in relevant part:

When ever any person shall have commenced a suit in any of the courts of this state, or in a district court of the United States, sitting in the state of Indiana, whether by complaint as plaintiff, or by cross-complaint as defendant, to enforce any lien upon, right to, or interest in, any real estate, upon any claim not founded upon an instrument executed by the party having the legal title to such real estate, as appears from the proper records of such county, and recorded as by law required; or not founded upon a judgment of record in the county wherein such real estate is situated, against the party having the legal title to such real estate, as appears from such proper records, it shall be the duty of such person to file with the clerk of the circuit court in each county where the real estate sought to be affected is situated, a written notice containing the title of the court, the names of all the parties to such suit, a description of the real estate to be affected, and the nature of the lien, right, or interest sought to be enforced against the same . . . .

<u>Curry</u>, 429 N.E.2d at 271.

18

> otherwise recorded or perfected may put his claim upon the public records, so that third persons dealing with the defendant . . . will have constructive notice of it.  []

See generally, 54 C.J.S. Lis Pendens s 23 (1948).

> The most frequent examples, and the clearest examples, of a proper lis pendens notice occur in situations where the plaintiff is asserting a claim to the title of real estate under an unrecorded deed or attempting to foreclose an unrecorded mortgage.  E.g. Fountain Trust Co., Rec. v. Rinker, (1932) 98 Ind. App. 249, 182 N.E. 709; Pennington v. Martin, (1897) 146 Ind. 635, 45 N.E. 1111.

> The opposite end of the spectrum is reached when a plaintiff files a lis pendens notice while asserting a personal claim against a defendant.  For example, other courts have been faced with cases where a party alleging breach of contract for services involving realty has filed a lis pendens notice against the property and held that the claim is personal against the defaulting party until a judgment lien is entered.  Rehnberg v. Minnesota Homes, (1952) 236 Minn. 230, 52 N.W.2d 454.

Id. at 272-273.

The court in Curry found that the case before it did not merely involve personal rights because, by conveying easement rights to purchasers of lots, the Currys would actually be conveying interests in the original easement that would conflict with those rights previously granted to Orwigs.  See Trotter v. Ind. Waste Sys., Inc., 632 N.E.2d 1159, 1163 (Ind. Ct. App. 1994) (discussing Curry), reh'g denied.  The Curry court stated that the only way in which prospective purchasers could be put on notice of the Orwigs' rights was by the filing of a lis pendens notice.  See id.

In Trotter, this court again addressed when a party had a sufficient interest in real estate pursuant to the lis pendens statute that would justify the filing of a notice under that statute.  See id. at 1162-1163.  After discussing and reviewing the examples discussed in Curry, the court held:

The case before us involves a claim to the title of real estate under a contract for the real estate's purchase. Such a claim is similar to the claim of an in rem interest in property through either an unrecorded deed or an unrecorded mortgage. Curry, supra. Indiana Waste's claim to the land's title through a contract for its sale is the kind of interest that requires filing a lis pendens notice under the statute to protect third parties.

Id. at 1163.

"The doctrine of lis pendens may not be predicated on an action or suit seeking merely to recover a personal or money judgment unless and until a valid judgment has been secured and made a lien against the property." Shortridge, 689 N.E.2d at 1252 (citing 54 C.J.S. *Lis Pendens* § 11, at 399 (1987) (footnotes omitted)). "Even cases involving a contract for services on the realty in question have been found to be personal and improper for lis pendens notice, until a judgment lien is entered." Id. at 1252-1553 (citing Curry, 429 N.E.2d at 273 (citing Rehnberg, 52 N.W.2d 454)).

In this case, we acknowledge that the Lis Pendens Notice was filed on October 30, 2007, prior to the JPMorgan Mortgage, which was dated November 13, 2007, and recorded November 27, 2007. In our 2011 Opinion, we held:

It is undisputed that here, the trial court's final judgment of January 16, 2007, was never entered in the Hamilton County judgment docket.

\* \* \* \* \*

Here, the trial court's final judgment of January 16, 2007, which as we noted unmistakably incorporated the previous monetary award against [Deborah], *clearly was sufficient to permit the establishment of a judgment lien against [Deborah's] interest in any real property in Hamilton County that could be foreclosed as to [Deborah], or any other party who had actual notice of the judgment against her*.

2011 Opinion at 3-4 (emphasis added). Thus, while the January 2007 Order was sufficient to permit the establishment of a judgment lien against Deborah which could be foreclosed

20

as to her interest in the Real Estate, we noted the January 2007 Order was not entered in the judgment docket, and as such it was insufficient to permit the establishment of a judgment lien which could be foreclosed as to a party who did not have actual notice of the January 2007 Order. Id. at 4 (noting that "the failure to properly record a judgment does not defeat the existence of a judgment lien upon a judgment debtor's property, at least as to the judgment debtor *and any parties who have actual notice of an outstanding judgment*") (emphasis added).

Claybridge's claim and judgment against Deborah for attorney fees and damages related to the removal of a survey monument.[15] Claybridge is not asserting a claim to the title of the Real Estate under an unrecorded deed or an unrecorded mortgage like the examples noted in Harvey and Townsend, easement rights such as in Curry, an unrecorded contract for the purchase of the Real Estate like in Trotter, or a similar interest in the Real Estate. Rather, the January 2007 Order in favor of Claybridge and against Deborah is personal as to Deborah. In terms of the spectrum mentioned in Harvey and Townsend, as noted in Curry and Trotter, Claybridge's claim under the January 2007 Order is nearer to the end of the spectrum of a personal claim against a defendant than that of a claim to title of real estate. See Curry, 429 N.E.2d at 273; Trotter, 632 N.E.2d at 1163.

In short, as noted in Curry and Trotter, the lis pendens statute is intended to apply to *in rem* interests in real estate, and any interest Claybridge may have had by virtue of the January 2007 Order did not constitute such an interest. JPMorgan did not have actual

---

[15] According to the 2011 Opinion, the trial court entered an order "awarding Claybridge $64,600 in attorney fees associated with obtaining the injunction and defending it on appeal, and $248 in damages associated with [Deborah's] removal of a survey monument." 2011 Opinion at 1.

notice of the January 2007 Order as it was not entered in the Hamilton County judgment docket, and the Lis Pendens Notice in this case was ineffective for the purpose of providing notice to JPMorgan that its security interest in the Real Estate under the JPMorgan Mortgage may have been subject to or impaired by the January 2007 Order.

Based upon the record and under the circumstances, and keeping in mind that the timeliness requirement should not be employed as a tool to sanction prospective intervenors but to insure the original parties are not prejudiced by an intervenor's failure to apply sooner, we conclude that the JPMorgan as the prospective intervenor met its burden under Trial Rule 24(A) and that its motion was not untimely. Accordingly, we reverse the trial court's denial of JPMorgan's motion to intervene and remand for further proceedings consistent with this opinion.[16]

## CONCLUSION

For the foregoing reasons, we reverse the trial court's January 16, 2014 order denying JPMorgan's motion to intervene and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J., and BRADFORD, J., concur.

---

[16] Both Deborah and Margaret are identified as mortgagors in the JPMorgan Mortgage. We do not address whether Margaret took her interest in the Real Estate, if any, subject to the January 2007 Judgment, which, as noted in the 2011 Opinion and above, turns on whether Margaret had actual notice of the January 2007 Judgment at the time of the 2007 Quitclaim Deed.